**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DARLETTE SHUEY, individually
and on behalf of all others similarly
situated,

      Plaintiff,

  vs.

BREVILLE USA, INC.,

      Defendant.

Case Number:

## CLASS ACTION COMPLAINT

Plaintiff Darlette Shuey ("Plaintiff"), individually and behalf of all others similarly situated, by and through her undersigned attorneys, brings this action against Breville USA, Inc. ("Defendant"). Plaintiff alleges the following based on personal knowledge as to her own acts and based upon the investigation conducted by her counsel as to all other allegations.

## INTRODUCTION AND SUMMARY OF ACTION

1.    Plaintiff brings this consumer class action lawsuit against Defendant, which manufactured, marketed, distributed, and sold the Breville Smart Oven Air Fryer Pro, model number BOV900BSSUSC (the "Oven"), without disclosing to purchasers that the Oven's glass window has a propensity to explode spontaneously

and without external impact (the "Defect"). Upon information and belief, the Defect is caused by Nickel Sulfide inclusion in the glass.

2.      This Defect creates a serious safety issue and renders the Oven unusable after manifestation. Information about the Defect would therefore be highly material to reasonable consumers.

3.      Defendant is unwilling to acknowledge the Defect, much less to eliminate it, or to provide refunds to consumers who have encountered it. Consequently, Plaintiff seeks to correct that injustice for herself, and others similarly situated.

4.      Defendant designs, manufactures, markets, advertises, distributes, and sells high-end appliances to consumers throughout the United States.

5.      Defendant distributes and sells its appliances, including the Oven, both directly through its website and also through various authorized retailers.

6.      Over the course of several decades, Defendant marketed its line of products as high-end luxury appliances and gained the trust of consumers, who reasonably believe that Defendant's appliances, including its ovens, are made with quality materials. Consumers reasonably believe Defendant's appliances can be used safely, as intended.

7.     The Oven itself retails for approximately $400.00 pre-tax.[1] As a premium countertop oven, it boasts 13 different preset functions: Bake, Airfry, Bagel, Broil, Roast, Warm, Pizza, Proof, Reheat, Toast, Cookies, Slow Cook, and Dehydrate. Meanwhile, the Oven boasts a distinct advantage of traditional ovens because it features a fan system that speeds up the heating process.

8.     The Oven's lofty price tag and image hide an alarming Defect: the glass window in the front of the Oven is predisposed to explode. When this window explodes with no warning, anyone standing nearby, or looking through the window, is in danger of being struck by sharp and burning hot shards of glass. The glass fragments, which are hot enough to melt the sealant on concrete countertops, have been found as far as 15 feet away from the Oven after such an explosion.

9.     The Defect is the result of uniform flaws in materials and/or workmanship and therefore poses a serious safety hazard to customers, operators, and anyone unfortunate enough to be standing nearby.

10.     Moreover, once the Oven's glass window bursts, it is impossible to keep the temperature inside the oven at the level necessary to cook food. Therefore, even if the user somehow felt safe using the Oven again after the Defect manifests, it would not be possible to do so.

---

[1] https://www.breville.com/us/en/products/ovens/bov900.html?sku=BOV900BSSUSC (last visited May 12, 2022)

11. The Defect renders the Oven useless at best and extremely dangerous at worst.

12. Numerous consumers have reported the Defect, which may manifest at any time. Consumers report witnessing the Defect as early as several weeks after purchase.

13. Defendant is aware of the Defect. Not only does Defendant have exclusive, non-public knowledge and data concerning the Oven through its own testing data, customers' complaints, warranty claims, and repair orders, it is or should be aware of the substantial numbers of consumer complaints on public forums. Despite numerous customer complaints—including those directly posted on Defendant's own website—Defendant refused to take action in the form of a recall or refund of the full purchase price.

14. Selling Ovens with dangerously defective glass windows jeopardizes the safety of the public.

15. Defendant's refusal to provide a refund also forces its customers to bear the expense of its mistakes and malfeasance.

16. In addition to a startling lack of concern for the safety of its customers, Defendant breached implied warranties and engaged in unfair, deceptive and/or fraudulent business practices.

17.    As a result of Defendant's conduct, owners of the Oven, including Plaintiff, have suffered an ascertainable loss of money, and/or property, and/or loss in value. Consumers impacted by the Defect are forced to expend time to furnish the Oven for repair and lose the use of the Oven while it is being repaired.

18.    To make matters worse, customer complaints reveal that Defendant simply replaces the defective windows with parts featuring the same Defect. Accordingly, Plaintiff and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant's conduct.

19.    Meanwhile, Defendant continues to unjustly enrich itself by selling the Oven with no warning of the Defect.

20.    Had Defendant disclosed the Defect, Plaintiff and the Class members would not have purchased the Oven or would have paid less for it.

21.    Plaintiff demands that Defendant accept responsibility for the Defect by refunding the full purchase price. In addition, or alternatively, Defendant should be required to buy back the Oven.

22.    This case seeks relief for the harm owners of the Oven have suffered, as well as protection from the safety risks resulting from Defendant's breaches of implied warranties and Defendant's unfair, unlawful, and deceptive trade practices. Simultaneously, this case presents an equitable claim of unjust enrichment.

## JURISDICTION, VENUE, AND GOVERNING LAW

23.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

24.    This Court has general and specific jurisdiction over the Defendant because Defendant has sufficient minimum contacts with Pennsylvania and within the Middle District of Pennsylvania to establish Defendant's presence in Pennsylvania, and certain material acts upon which this suit is based occurred within the Middle District of Pennsylvania. Defendant does substantial business in the State of Pennsylvania and within this Judicial District, and otherwise maintains requisite contacts with the State of Pennsylvania. Specifically, Defendant distributed and sold, including through third-party retailers, the Oven in Pennsylvania.

25.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the Middle District of Pennsylvania and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial District, including that Plaintiff purchased and used the Oven in Pennsylvania. Additionally, Defendant distributes the Oven in this District, receives substantial compensation and profits from the sale

6

of Product in this District and has and continues to conceal and make material omissions in this District.

## PARTIES

26.     Plaintiff Darlette Shuey is a resident of Kunkletown, Pennsylvania, who purchased the Oven during the relevant time period.

27.     Defendant is a California corporation, with its principal place of business located at 19400 South Western Avenue, Torrance, California 90501.

## FACTUAL ALLEGATIONS

### A. Common Allegations

28.     The Oven is marketed and sold as a multi-functional countertop convection oven with an array of features. Its functions include, among other things, air frying, broiling, baking, roasting, and dehydrating. It weighs nearly 40 pounds and has interior dimensions of a cubic foot—large enough to hold a 14-pound turkey or five-quart Dutch oven. Food preparation also occurs more quickly in the Oven relative to a traditional oven because its fan system circulates heat. Given the capacity and robust functionality, the Oven can and does act as a replacement for a full-sized oven for many consumers. Indeed, the Oven's hefty price tag of $399.99 nears what consumers would pay for a large, freestanding oven. As such, the Oven is a product that bridges the gap between cheap countertop toaster ovens and full-size, multifunctional ovens. Over at least the last five years, Defendant designed,

manufactured, warranted, advertised, and sold the Oven to thousands of consumers throughout the United States.

29.     The Oven features a glass window that allows the user to view the progress of the food items being prepared.

30.     This window is predisposed to violently burst when the Oven is in use, without warning or action on the part of the user, sending shards of burning hot glass flying.

31.     In addition to the safety concerns caused by the Defect, the bursting of the glass window makes it impossible to keep hot air from escaping and cooler outside air from entering the oven, frustrating the Oven's essential heating function. As a result, the manifestation of the Defect renders the Oven inoperable.

32.     Upon information and belief, this Defect is caused by common failures in material and/or workmanship. Specifically, Plaintiff alleges that Nickel Sulfide impurities in the glass render the Ovens' windows susceptible to sudden breakage.[2]

33.     As discussed above, the Oven's expense, internal capacity, and functionality make it akin to a larger, traditional oven. Given that, the expected

---

[2] Barry, J.C., Ford, S. "An electron microscopic study of nickel sulfide inclusions in toughened glass." Journal of Materials Science 36, 3721–3730 (2001); Mognato, E. and A. Barbieri, "The Breakage of Glass – Thermal shock and nickel sulfide inclusion." COST Action TU0905, Mid-Term Conference on Structural Glass, Belis, Louter & Mocibob (Eds). 2013. Pp 155-163; ASTM Standard C1036-21, "Standard Specification for Flat Glass," ASTM International, West Conshohocken, PA, 2021, DOI: 10.1520/C1036-21; Solinov, V.. "Effect of nickel sulfide inclusions on the spontaneous failure of toughened glasses." Glass and Ceramics - GLASS CERAM-ENGL TR. 64. 149-152. 10.1007/s10717-007-0038-z. 2007.

service life of the Oven should be in the range of 13 years.[3] However, the Oven is prone to premature failure before the end of its expected service life due to the Defect.

34.    The Defect is also invisible until it has manifested, making it impossible for consumers to identify the Oven as defective prior to purchase.

### B. Plaintiff Shuey's Allegations

35.    On January 29, 2022, Plaintiff Darlette Shuey purchased the Oven from the Bed Bath and Beyond website. Plaintiff purchased the Oven for $399.99, and with tax, she paid $423.99.

36.    Plaintiff purchased the Oven for her personal use to use in various food preparations. She was initially impressed by the Oven's multifunctionality, convenience, and its association with a well-regarded brand such as Breville.

37.    Plaintiff used her Oven in a manner typical of reasonable consumers.

38.    On or around February 5, 2021, the Defect manifested in Plaintiff Shuey's Oven. Plaintiff was using the Oven to heat frozen French fries when she heard a sound like a bomb explosion. Glass shards from the Oven's window flew across the kitchen at high velocity, landing up to approximately 15 feet away from

---

[3]    *See* https://www.ahs.com/home-matters/repair-maintenance/lifespan-of-modern-home-appliances/ (last visited May 12, 2022) (average lifespan of electric range is 13 years).

the Oven. A few glass shards imbedded themselves in Plaintiff's arms, which she had to remove herself.

39.     The glass shards expelled from the Oven were so hot that, upon landing, they melted the sealant on Plaintiff's countertops.

40.     Following the manifestation of the Defect in the Oven, Plaintiff Shuey contacted Breville by phone. Fearing that a replacement Oven would present the same safety risks, Plaintiff asked if she could get her money back. Defendant has not issued a refund.

41.     If Plaintiff had been informed of the Defect, she would not have purchased the Oven or would have paid substantially less for it.

42.     Plaintiff Shuey's Oven has suffered damage caused by the Defect as shown below.



43.     As a result of the explosion, the interior of Plaintiff Shuey's Oven cannot retain the requisite heat to prepare meals. It is therefore inoperable.

## C. Defendant Had Superior and Exclusive Knowledge of the Defect.

44.     Defendant knew or should have known when it sold the Oven to the public that the Oven suffered from the Defect, was unsafe, could not be expected to function properly for the full duration of its expected useful life, presented an unreasonable risk that the glass would shatter, and presented an unreasonable and significant risk of personal injury and/or property damage to consumers and the public.

45.     Upon information and belief, Defendant's knowledge of these facts may be established through consumer complaints, including several years' worth of public internet posts regarding the glass window of the Oven shattering during normal use. Despite years of customer complaints—including those found on its own website—Defendant has failed to act to remedy or eliminate the Defect in the Oven or remove it from the stream of commerce.

46.     Defendant's website allows shoppers to purchase appliances and review feedback from previous purchasers. Defendant's awareness of this review platform is made evident by the "Response[s] from Breville" to assorted reviews.[4] Below are several customer complaints regarding the Oven found on Defendant's own website.

---

[4] https://www.breville.com/us/en/products/ovens/bov900.html?sku=BOV900BSSUSC

47.     Examples of the customer complaints, which highlight the pervasiveness of the issue and the safety implications of the defective Oven, are reproduced below.







48.     Customers also flagged the Defect in the review section of Defendant's amazon.com store.[5] Below are examples of these complaints, which often are accompanied by images of the defective Oven.



whalemeal

★☆☆☆☆ **Glass crack shattered with 3 uses**

Reviewed in the United States on November 29, 2018

Style: New    **Verified Purchase**

Potential buyers be aware: The glass may be shattered and pop out up to everywhere in your kitchen while cooking.

The front glass unit shattered and popped to outside with 3 uses of roasting(using the exact preset setting). I didn't see any indication of this when we first inspected the unit. This could have potentially hurt my family if anybody had been near the thing. At our first use, I was actually standing right in front of the glass to see how it works and I don't want to imagine what could have happened there. Those 400 degree glass pieces right into my face.

Of course, I will return this thing and will never purchase anything from this brand. Very disappointing.



 Mike Sea

★☆☆☆☆ **Safety hazard**

Reviewed in the United States on April 1, 2019

Style: New | **Verified Purchase**

I was enjoying the oven just fine until the glass door exploded.



 KH

★☆☆☆☆ **Glass door shattered while in use**

Reviewed in the United States on May 30, 2019

Style: New | **Verified Purchase**

Glass door shattered while using the Bake function at 400 degrees. I'm contacting Breville customer service today and hoping I have better luck than some other reviewers with issues. I've only had this product for about 6 weeks.




Leigh Tanner

★☆☆☆☆  **BUYER BEWARE! GLASS SHATTERED ON FIRST USE!**
Reviewed in the United States on May 19, 2019
Style: New   |   **Verified Purchase**

We have owned a Breville toaster oven for over 8 years and it has worked great for us. We decided to upgrade to the larger model and on the first use on Toast Mode the glass shattered all over the kitchen. Thankfully my kids and I were not near it when it happened.



 Joseph Miller

★☆☆☆☆   **Great convection oven when the glass panel doesn't explode.**
Reviewed in the United States on December 11, 2019
Style: New | **Verified Purchase**

My wife and I have been using this oven for the past 2 weeks and we have loved it! it heats up quick,
cooks food fast and consistently and all the features work as expected (fries out of this are amazing).
We've used it multiple times a day since we've got it, but yesterday after using it (about 5 minutes
after while it was off) my wife was standing next to it when the glass door exploded and threw hot
glass all over her. Luckily she was wearing long sleeves and didn't get hurt or burned.
Hate to return it instead of exchanging it, but after reading reviews and searching online it doesn't
seem to be an isolated incident (other reviews on Amazon mentioned the same thing happening).



 Linette Valdivia

★☆☆☆☆   **SAFETY HAZARD!!! DANGEROUS EXPLODING GLASS! DO NOT BUY!!!!!**
Reviewed in the United States on January 20, 2021
Style: New | **Verified Purchase**

SAFETY HAZARD!!! BUYER BEWARE!!!!

I could not wait to get this toaster oven because I had been wanting it for a long time but couldn't find myself paying $400 for a toaster. My fiancé finally decided to buy it when it went on sale for Black Friday 2020. Everything was great because the only thing we would use it for was toasting our bread and sandwiches. Well last night we decided to try out the air fryer function for the very first time and the tempered GLASS literally EXPLODED!!!!!!!! My fiancé and I were only about two feet to the left away from it otherwise it could have been detrimental!!! I can't even begin to think about the "what if's"!!! I have two little nephews that were over the night before and I'm just thankful to God that they were not visiting me last night because I did invite them over with my sister to come try the fried chicken! After it exploded, I started seeing the reviews and this is an ongoing issue that has been happening! Shame on Breville for allowing this product to still be on the shelves and not recalling it!!!! It could really hurt someone if they don't fix this issue!



 Rima K

★☆☆☆☆ **Disappointed**
Reviewed in the United States on July 30, 2020
Style: New | **Verified Purchase**

This is my second Breville. The first one just quit working (again about 6 months, thought it was a fluke) and this one had the glass explode while cooking dinner! the irony is WHEN it works I love it. But just 8 months this time and well, you see the results in the picture. my sister was 1 foot away and it scared the crap out of her. I was in the bedroom and heard it explode.

I will be curious to see if Breville pays attention to these reviews



 Lynn Johnson

★☆☆☆☆  **Do not purchase this item...it is dangerous!**

Reviewed in the United States on December 9, 2021

Style: New | **Verified Purchase**

This machine exploded on my counter top only two months after purchase. The support center said it did not have enough ventilation, but there was a foot clearance all around the product at the time of the explosion. Luckly no one was near the unit when this occurred as glass was all over the floor in an 8 foot radius. Very poor customer service and after 3 months of promising to send another replacement....nothing has arrived and when you call, you are put on hold for 30-60 minutes. But wait....there is more... after holding, the call is randomly (conveniently) dropped so you have to start all over again. I have only been able to talk to them one time. Buy this product at your own peril.



 Judy Davis

★☆☆☆☆ **Unsafe – glass shatters**

Reviewed in the United States on October 19, 2019

Style: New | **Verified Purchase**

The first one we received from Amazon was promptly replaced by Breville when the glass exploded after 1 month of sporadic use. As a long time consumer of Breville products we thought it was a random incident. The same thing happened with this one - not quite an explosion but the glass shattered again - this is not a safe product. Weeks have gone by and Breville has not responded - I am still trying to find a way to return and get a refund.

 Linda

★☆☆☆☆ **Dangerous Defect!**

Reviewed in the United States on January 27, 2021

Style: New | **Verified Purchase**

Beware! Glass blew out of the door this evening ruining a portion of my dinner. First time we used the "roast" feature. There is glass on the floor, on the counter in front of it and inside the oven. Now that I look at the reviews there should be a recall. All the pictures where glass has broken including my own show the top portion of the glass missing. It doesn't just crack, the glass blows out. Multiple time I have turned on the oven light to look closely at what was in the oven to check for progress of food and I can't imagine what my face and eyes would look like had this happen when I was looking closely at what I was cooking through the window. This has to be a known defect with Beville. We may contact consumer affairs.



 mom10000

★☆☆☆☆ **Sad it broke!**

Reviewed in the United States on July 26, 2021

Style: New | **Verified Purchase**

We had this for less than 2 months and the glass shattered while we were cooking dinner! Hopefully breville will replace.



 Naomi Young

★☆☆☆☆ **Your Breville may explode!**

Reviewed in the United States on December 5, 2020

Style: New | **Verified Purchase**

Buyer beware! I purchased this smart oven due to its popularity and many functions. A few weeks after purchase, the front glass exploded while in air fry mode. Luckily, me and my kids weren't in the kitchen because glass flew everywhere! According to the internet, this happens to others as well and not an isolated case. Working with Breville to get a replacement has also been a nightmare because they don't respond back even after emailing and leaving requests on their website.



 aeap

⭐☆☆☆☆  **Glass shattered third time using**

Reviewed in the United States on December 6, 2019

Style: New  |  **Verified Purchase**

I unboxed this item as stated and setup, as stated. Third time I used this, the front glass completely shattered. Cleaned up the mess and got rid of the item as I have small kids at home and contacted Breville. Will see what they say. For now, I would highly recommend NOT purchasing this product.

21 people found this helpful

 David Reyes

⭐☆☆☆☆  **No good**

Reviewed in the United States on January 13, 2019

Style: New  |  **Verified Purchase**

First I was so excited! It was perfect for us, we have this for less thank 2 months and i was cooking chicken legs and literally exploded braking the glass and it was very scary I had my kids around thanks God they didn't suffer any injuries, I'm putting the pictures!



 gail

★☆☆☆☆ **Door shattered while in bake mode**
Reviewed in the United States on July 8, 2019
Style: New | **Verified Purchase**

We had this oven LESS THAN two months. It was great and very useful for baking, air frying, and warming. I was very pleased with my choice and my investment. I was 18 minutes in to a 20 minute bake cycle yesterday when I heard a loud POP. I was across the kitchen. The glass door on the oven shattered. Amazon only has a 30 day return policy on this item. I am double that time frame. I am left to deal with Breville direct now. Oven door was never bumped, nothing was ever placed on it. I read and followed all their instructions. I have been babying this machine. So disappointing.



 YRCZYMYCZY

★☆☆☆☆ **Front Glass Exploded Out During Normal Cooking**
Reviewed in the United States on October 8, 2020
Style: New | **Verified Purchase**

This oven worked pretty well for us for about a year. Shortly after the 1 year warranty expired, the front glass exploded out while a normal cook of a frozen pizza. This was very disappointing. We've taken excellent care of the oven and hoped it would last at least 4 or 5 years!

14 people found this helpful

 aryxus

★☆☆☆☆ **This oven explodes in a shower of glass.**
Reviewed in the United States on June 19, 2019
Style: New | **Verified Purchase**

We've been using this oven for less than 3 weeks, and today it exploded while roasting an onion. Doesn't really matter how easy to use or how big it is if it's just going to explode on you.

So, I guess the salient takeaway from this review is that this oven explodes. If you don't want your ovens exploding, try a different brand.



 Dominic G.

★☆☆☆☆ **Oven exploded**

Reviewed in the United States on April 28, 2020

Style: New | **Verified Purchase**

Bought 8 months ago. Tonight air frying chicken the glass door exploded outwards and shot glass all over my kitchen. The oven was 12-15 minutes into a cooking cycle and I was across the kitchen when it happened. Nobody was near the oven fortunately. Cooking temp was only 385. I'll see how Breville deal with this when no the customer service comes on line tomorrow. Huge disappointment after paying top dollar for "the best" ?

12 people found this helpful

 Leora

★☆☆☆☆ **Disappointed**

Reviewed in the United States on August 3, 2019

Style: New | **Verified Purchase**

The glass on the door shattered (exploded) while using the oven the second day i got it. I made sure it had at least 6 inches from the back wall, sides, and top while in use.

17 people found this helpful

 Dustyjob

★☆☆☆☆ **WORTHLESS PIECE OF JUNK ... SAVE YOUR MONEY!!**

Reviewed in the United States on December 27, 2019

Style: New | **Verified Purchase**

After five months of use, the glass oven door shattered! Unfortunately, it's beyond return time for Amazon and Breville doesn't do refunds unless purchased from them. So, I am getting a replacement that I am worried about using and having this piece of garbage blowing up in my face. No more Breville products for me!!!!!

7 people found this helpful

 velvul

★☆☆☆☆ **Only worked for 4 days**

Reviewed in the United States on January 31, 2019

Style: New | **Verified Purchase**

On day 4, during preheating to preset 425 degree, the glass burst out all around the kitchen. Luckily there were no kids around at that time, could be much worse. No more Breville oven for me!



 Nina K.

★☆☆☆☆ **Exploding glass**

Reviewed in the United States on January 3, 2022

Style: New | **Verified Purchase**

Toasting a piece of toast and the glass in the oven door exploded. Very dangerous!!!
And a mess to clean up.
I do not recommend this oven.



 Amazon Customer

★☆☆☆☆ **Returned**

Reviewed in the United States on February 11, 2020

Style: New | **Verified Purchase**

After only 6-8 uses the glass on the door shattered and fell out- extremely disappointed- it is on its way back

9 people found this helpful

Helpful | Report abuse

 Michael D. Ames

★☆☆☆☆ **Glass explodes on first warm up!!! UPDATE 2nd one shatters on April 1 2020.**
Reviewed in the United States on November 20, 2019
Style: New

After looking at reviews decided on spending the extra money and getting what we thought was the top of the line air fryer etc. oven. Was so excited to use it and following the instruction book did the first warm up to clean the elements. The oven preheated fine and about 5 min into the cycle exploded sending glass everywhere. I purchased this thru a different site called them and they are sending a new one. Not impressed with Breville!!!! Thankfully nobody was injured when the glass exploded.

The replacement unit was working ok until April 1 2020. I had put a frozen pizza in, which I had cooked before the same way and about 10 min into the cook the window blew!!!

The customer service for Breville was terrible but the company we had ordered from returned our money. We then purchased another brand at around 1/2 the price as this and we LOVE it!!!! It cooks lots better!!! Do not waste your money on this overpriced junk!!

 Donna C

★☆☆☆☆ **Front Glass SHATTERED While Baking at just 375 degrees!**
Reviewed in the United States on March 15, 2019
Style: New

We bought this oven exactly a week ago and have used it daily. I loved it! The light, the air fryer ability, and the fact that you could use 2-3 racks at a time were great! However, I was just baking a potato today at 375 degrees. I heard a loud crash, and walked into the kitchen to see this. I'm thankful that no one was close to this when it happened!



 Nikki

⭐☆☆☆☆  **Glass shattered**

Reviewed in the United States on December 2, 2019

Style: New

Was so excited , my boyfriend got this for me . Went to make wings and the glass shattered while cooking. I except more from a top named company.



 Suzanne

⭐☆☆☆☆  **BEWARE - Glass shattered after 3 months**

Reviewed in the United States on January 19, 2021

Style: New

The oven had 6-9 inches ventilation space on all sides. Put pizza in to cook, left for a few minutes, came back to see glass everywhere.











49.     Because of its knowledge of the Defect, Defendant has a duty to disclose the Defect and to not conceal it from consumers. Defendant's failure to

disclose, and/or active concealment of, the serious safety Defect places Plaintiff and the public at an unreasonable and unnecessary risk of personal injury and/or property damage.

50.     Defendant still markets and sells the Oven, still conceals the existence of the Defect, still fails to notify consumers of the Defect and its safety implications, and still fails to recall the Oven.

51.     When Defendant repairs the Oven after the glass breaks or shatters, it fails to properly attribute the failure to the Defect, and merely replaces the defective glass door with an identical, equally defective part, which does not prevent the recurrence of the issue.

## CLASS ALLEGATIONS

52.     Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the individuals in the below-defined classes (collectively, the "Class Members"):

**Nationwide Class:**
During the fullest period allowed by law, all persons residing in the United States who own or owned the Oven (the "Nationwide Class").

**Pennsylvania Subclass:**
During the fullest period allowed by law, all persons residing in the State of Pennsylvania who own or owned the Oven (the "Pennsylvania Subclass").

53.    Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

54.    Plaintiff seeks only damages and equitable relief on behalf of herself and the putative Classes. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries or emotional distress suffered by Plaintiff and/or putative Class Members.

55.    Plaintiff reserves the right to modify the class definitions, if necessary, to include additional appliances with the same Defect.

56.    **<u>Numerosity</u>**: Class Members are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of thousands of people geographically disbursed throughout the United States. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. Class Members are readily identifiable from information and records in the possession of Defendant and its authorized distributors and retailers.

57.    **Commonality**: Common questions of law and fact exist as to all Class Members. These questions predominate over questions that may affect only individual Class Members because Defendant acted on grounds generally applicable to all Class Members. Such common legal or factual questions include, inter alia:

(a)    Whether the glass used in the Oven is defective;

(b)    Whether the Oven has a flaw in materials and/or workmanship;

(c)    Whether Defendant knew or reasonably should have known about the defective glass used in the Oven prior to distributing and selling the Oven to Plaintiff and Class Members;

(d)    Whether Defendant knew or reasonably should have known about the defective glass used in the Oven after distributing and selling the Oven to Plaintiff and Class Members;

(e)    Whether Defendant concealed from and/or failed to disclose to Plaintiff and Class Members that defective glass is used in the Oven;

(f)    Whether Defendant breached the implied warranty of merchantability

(g)    Whether Defendant breached express warranties relating to the Oven;

(h)    Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(i)    Whether Defendant should be enjoined from selling and marketing the defective Oven; and,

(j)    Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Oven.

58.   **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

59.   **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defective glass at issue. Plaintiff has standing to make this claim because she would consider purchasing another Oven provided that the common Defect is fixed going forward. Defendant acted and refused to act on grounds that apply generally to the Class Members, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Nationwide Class and Pennsylvania Subclass as a whole.

60.   **Predominance and Superiority**: Plaintiff and Class Members all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size

of their individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

61.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

62.    Defendant acted or refused to act on grounds generally applicable to the Nationwide Class and Pennsylvania Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes appropriate.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

63.    Defendant possessed exclusive knowledge about the Defect, which is unavailable to Plaintiff and the Class Members.

64.    Throughout the time period relevant to this action, Defendant concealed the nature of the Defect. As a result, neither Plaintiff nor the absent Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

65.     Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, and (c) continues to conceal critical information relating to the Oven's defective glass windows, even though, at any point in time, it could have communicated this material information to Plaintiff and the Class Members through individual correspondence, media releases, or other means.

66.     Plaintiff and Class Members relied on Defendant to disclose the dangerous Defect because the flawed nature of the Oven's glass window could not be discovered through reasonable efforts by Plaintiff and the Class Members.

67.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class Members have against Defendant as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

68.     Defendant was under a continuous duty to Plaintiff and Class Members to disclose the true nature, quality, and character of its Oven. However, Defendant concealed the true nature, quality, and character of the Oven, as described herein. Defendant knew of the Defect for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the glass used in the Oven. Based upon the foregoing, Defendant is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

## COUNT I
**Breach of Implied Warranties**
**(On Behalf of Plaintiff and the Classes)**

69.     Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

70.     Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Oven. Defendant knew or had reason to know of the specific use for which the Oven, as a good, is purchased.

71.     Defendant entered into agreements with retailers and suppliers to sell its Oven to Class Members.

72.     Defendant provided Plaintiff and Class Members with implied warranties that the Oven is merchantable and fit for the ordinary purposes for which it is used and sold and is not otherwise injurious to consumers.

73.     However, the Oven is not fit for its ordinary purpose of reliably and safely cooking and/or heating food. This is because, inter alia, the Oven contains defective glass-front windows which explode, preventing it from safely cooking and/or heating food without the risk of the glass shattering. This shattering glass could injure the consumer, damage the consumer's property, and taint the food that the consumer was attempting to cook and/or heat. In fact, once the glass breaks or shatters, the Oven is rendered entirely useless, as it cannot be used without an intact glass-window door to seal the Oven and keep the heat trapped within. For all these

reasons, the Oven is not fit for its particular purpose of safely cooking and/or heating food.

74.     The Defect renders the Oven unsafe, unreliable, and unusable. Therefore, Defendant breached the implied warranty of merchantability.

75.     Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Retailers selling Defendant's products were not intended to be the ultimate consumers of the Oven and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer, making Plaintiff and Class Members the intended beneficiaries.

76.     Defendant's statements contained in its product literature, including the Oven's warranty, make it clear that Defendant intended that its warranties applied to Plaintiff and Class Members as third-party beneficiaries.[6] Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiaries of the Oven and warranties.

77.     Defendant impliedly warranted that the Ovens were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Oven manufactured, supplied, distributed, and/or sold by

---

[6] *See* https://www.breville.com/us/en/support/warranty.html (last visited Apr. 19, 2022).

Defendant was safe and reliable for heating and/or cooking food; and (ii) a warranty that the Oven would be fit for its intended use while it was being operated.

78.    Contrary to the applicable implied warranties, the Oven, at the time of sale and thereafter, was not and is not fit for the ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe methods of heating and/or cooking food. Instead, the Oven suffers from a defective design and/or manufacture, as alleged herein.

79.    Defendant's sale of defective and dangerous appliances and failure to provide a refund caused the implied warranty to fail in its essential purpose.

80.    Defendant breached the implied warranties because the Oven was sold with the Defect, which substantially reduced and/or prevented it from being used for safe food preparation.

81.    Defendant was put on constructive notice about its breach through its review of consumer complaints described herein, complaints on Defendant's own website, and upon information and belief, through product testing. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Oven is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Oven is null and void.

82.    As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, financial damage and injury, and are

entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT II
### Breach of Implied Warranty
### Magnuson-Moss Warranty Act
### (On behalf of the Nationwide Class)

83.     Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

84.     Plaintiff and Nationwide Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

85.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

86.     The Oven is a "consumer product[]" as defined in 15 U.S.C. § 2301(1).

87.     Defendant extended an implied warranty to Plaintiff and Nationwide Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers the Defect in its Oven.

88.     Defendant breached this implied warranty by selling a defective Oven that was neither merchantable nor fit for its intended purpose.

89.     As a direct and proximate result of Defendant's breach of the implied warranty under the Magnuson-Moss Act, Plaintiff, and the Nationwide Class, have been damaged in an amount to 'be proven at trial.

<u>**COUNT III**</u>
**Violation of the Pennsylvania Unfair Trade Practices
and Consumer Protection Law (73 P.S. §§ 201-1, *et seq.*)
(On Behalf of the Pennsylvania Subclass)**

90.     Plaintiff repeats and realleges, as if fully stated herein, each and every

allegation set forth in the preceding paragraphs of this Complaint.

91.     Plaintiff brings this cause of action on her own behalf and on behalf of

the members of the Pennsylvania Subclass.

92.     Plaintiff and the Pennsylvania Subclass purchased the Oven primarily

for personal, family or household purposes within the meaning of 73 P.S.§ 201-9.2.

93.     All of the acts complained of herein were perpetrated by Defendant in

the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

94.     The Pennsylvania Unfair Trade Practices and Consumer Protection

Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:

> (d)"Engaging in any other fraudulent or deceptive conduct which creates a
> likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

95.     Defendant engaged in unlawful trade practices including selling

defective and dangerous appliances without providing warning to consumers, and

by engaging in other fraudulent or deceptive conduct which creates a likelihood of

confusion or of misunderstanding.

96.     In the course of its business, Defendant willfully failed to disclose and

actively concealed the defective glass discussed herein and otherwise engaged in

activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Oven.

97.    Defendant knew it had installed defective glass windows in the Ovens and knew that the defective windows may explode.[7] Despite this knowledge, Defendant concealed all of that information.

98.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the Defect.

99.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Pennsylvania Subclass, about the true functionality of the Oven, the quality of the Breville brand, and the true value of the Oven. Breville knew or should have known that its conduct violated the Pennsylvania CPL.

100.    Defendant owed a duty to disclose the dangerous Defect to the Plaintiff and Pennsylvania Subclass because Defendant possessed superior and exclusive knowledge regarding the Defect. Rather than disclose the defect, Defendant engaged

---

[7] Complaints posted to Defendant's website and its amazon store date back to at least 2018.

in unfair and deceptive trade practices in order to sell additional appliances and avoid the cost of recalling the Ovens and refunding the purchase price.

101.   Defendant's unfair and deceptive practices and/or material omissions regarding the Defect were intended to mislead consumers and misled Plaintiff and the Pennsylvania Subclass.

102.   At all relevant times, Defendant's unfair and deceptive acts or practices and/or omissions regarding the defective glass were material to Plaintiff and the Pennsylvania Subclass.  When Plaintiff and the Pennsylvania Subclass purchased their Ovens, they had the reasonable expectation that the Ovens would be free from defects and would have a safe, non-defective glass window.  Had Defendant disclosed that the Oven's glass windows were defective, dangerous and would cause significant monetary losses, Plaintiff and the Pennsylvania Subclass would not have purchased the Oven or would have paid less for it.

103.   Defendant's unlawful acts and practices affect the public interest and trade and commerce in the State of Pennsylvania, were in bad faith, and present a continuing safety hazard to Plaintiff, the Pennsylvania Subclass and the public.

104.   As a direct and proximate result of Defendant's violations of the Pennsylvania CPL, Plaintiff and the Pennsylvania Subclass have suffered actual damages and/or injury in fact, including, inter alia, the difference in value between the Oven promised and impliedly warranted, and the Oven actually provided.

105.   Defendant is liable to Plaintiff and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a).  Plaintiff and the Pennsylvania Subclass are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights and safety of others.

## COUNT IV

### Unjust Enrichment/Restitution
### (On behalf of the Nationwide Class/Asserted in the Alternative on behalf of the Pennsylvania Subclass)

106.   Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

107.   Defendant has been unjustly enriched as a result of the conduct described in this Complaint.

108.   Defendant received a benefit from Plaintiff and the members of the Nationwide Class and Pennsylvania Subclass in the form of payment for the Oven.

109.   Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in the unlawful, unjust, and wrongful acts, omissions, and practices described in this Complaint.

110.   The benefits (or at least some portion the benefits) that Defendant received were not legitimately earned and came at the expense of Plaintiff and the other members of the Nationwide Class and Pennsylvania Subclass.

111.   Defendant knows that the Ovens can physically harm its customers, but nonetheless continues to sell them without warning.

112.   Defendant's conduct is unjust, inequitable, and wrongful, but systematically engages in this conduct anyway in order to gain unfair advantages and reap unearned financial benefits.

113.   There is no justification for Defendant's continued silence as customers purchased the defective and dangerous Oven.

114.   It is therefore against equity and good conscience to permit Defendant to retain the proceeds from their sales of the defective Oven.

115.   Plaintiff and the Nationwide Class are entitled to restitution and disgorgement of all amounts unjustly retained by Defendant, as well as other appropriate relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court:

A.   Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Name Ms. Shuey as Class Representative of the Classes;

C.      Name Plaintiff's counsel as Class Counsel for the Classes;

D.      Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.      Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

F.      Award Plaintiff and the Class Members their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.      Award Plaintiff and the Class Members pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and,

H.      Award such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 1, 2022                     Respectfully submitted,


                                        */s/ D. Aaron Rihn*
                                        D. Aaron Rihn , Esquire
                                        ROBERT PEIRCE & ASSOCIATES, P.C.
                                        707 Grant Street
                                        Suite 125
                                        Pittsburgh, PA 15219-1918
                                        412-281-7229
                                        arihn@peircelaw.com